IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 2 1 2015

CLERK, U.S. DISTRICT COURT
By _____
        Deputy
```

| | | |
|---|---|---|
| NITA PAGE, AS ADMINISTRATRIX OF THE ESTATE OF JACOB WOULLARD, DECEASED, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:15-CV-367-A |
| JPMORGAN CHASE BANK, N.A., | § § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the motion of defendant, JPMorgan Chase Bank, N.A., to dismiss plaintiff's first amended complaint for failure to state a claim upon which relief may be granted. After having considered such motion, the response of plaintiff, Nita Page, as Administratrix of the Estate of Jacob Woullard, Deceased, thereto, defendant's reply, and pertinent legal authorities, the court has concluded that such motion should be denied.

I.

Plaintiff's Complaint, As Amended

In summary form, the factual basis of the claim alleged by plaintiff is as follows:[1]

In June 2007, Jacob Woullard ("Woullard"), as the borrower, executed a note in the principal amount of $219,663.00 and a deed

---

[1]As appropriate, the court is including in its summary pertinent parts of exhibits that are attached to, and referenced in, the complaint.

of trust naming Chase Home Finance, LLC ("Chase"), the
predecessor to defendant, as the lender.  The deed of trust
created a lien on property located at 5113 Sunwood Court, Fort
Worth, Texas, as security for payment of the note.  The note
contained a notice of default and acceleration provision worded
as follows:

> If I am in default, the Note Holder may send me a
> written notice telling me that if I do not pay the
> overdue amount by a certain date, the Note Holder may
> require me to pay immediately the full amount of
> Principal which has not been paid and all the interest
> that I owe on that amount.  That date must be at least
> 30 days after the date on which the notice is mailed to
> me or delivered by other means.

Doc. 6, Ex. A at 2.[2]  The deed of trust (1) provided that
Woullard would pay when due the principal of, and interest on,
the note, Doc. 6, Ex. B at 4, ¶ 1, and (2) contained an
acceleration provision worded as follows:

> Acceleration; Remedies.  Lender shall give notice
> to Borrower prior to acceleration following Borrower's
> breach of any covenant or agreement in this Security
> Instrument . . . .  The notice shall specify:  (a) the
> default; (b) the action required to cure the default;
> (c) a date, not less than 30 days from the date the
> notice is given to Borrower, by which the default must
> be cured; and (d) that failure to cure the default on
> or before the date specified in the notice will result
> in acceleration of the sums secured by this Security
> Instrument and sale of the Property.  The notice shall
> further inform Borrower of the right to reinstate after

---

[2]The "Doc. ___" references are to the number assigned to the referenced document on the clerk's
docket for Case No. 4:15-CV-367-A.

acceleration and the right to bring a court action to
assert the non-existence of a default or any other
defense of Borrower to acceleration and sale.  If the
default is not cured on or before the date specified in
the notice, Lender at its option may require immediate
payment in full of all sums secured by this Security
Instrument without further demand and may invoke the
power of sale and any other remedies permitted by
Applicable Law.  Lender shall be entitled to collect
all expenses incurred in pursuing the remedies provided
in this Section 22, including, but not limited to,
reasonable attorneys' fees and costs of title evidence.
For the purposes of this Section 22, the term "Lender"
includes any holder of the Note who is entitled to
receive payments under the Note.

Id. at 13, ¶ 22.

Woullard died on May 1, 2009.  Id., Ex. C.  On January 4,

2010, Chase sent a letter to "Estate of Woullard," using the

Sunwood Court address for the property secured by the deed of

trust.  Id., Ex. D.  The reference in the letter stated in bold

face "Acceleration Warning (Notice of Intent to Foreclose)."  Id.

at 1.  Chase informed Estate of Woullard by the letter that it

was in default because it had failed to pay the required monthly

installments commencing with the payment due November 1, 2009,

and that as of January 2, 2010, a payment of $10,274.97 would

have to be made to cure the default.  Id., ¶ 2.  Estate of

Woullard was told (1) that "[i]f you fail to cure the default

within thirty-two (32) days from the date of this notice, Chase

Home Finance LLC will accelerate the maturity of the Loan, . . .

declare all sums secured by the Mortgage immediately due and

payable, and commence foreclosure proceedings, all without further notice to you," <u>id.</u> at 1st and 2d unnumbered pages, ¶ 4, and (2) that "you have the right to reinstate after acceleration of the Loan," <u>id.</u> at 2d unnumbered page, ¶ 5.[3]

On February 3, 2011, Chase, acting through a law firm, sent the Estate a notice that was worded as follows:

> This correspondence is sent in conjunction with the processing of a non-judicial foreclosure. Accordingly, it is your responsibility to determine if a Trustee's sale might be scheduled for a date earlier than the expiration date of these figures.
>
> **UNLESS THE FUNDS SPECIFIED BELOW ARE RECEIVED BEFORE THE SCHEDULED SALE DATE AND TIME, THE FORECLOSURE SALE WILL BE HELD AS SCHEDULED.**
>
> The amount to Payoff the above referenced loan as of 2/3/2011 is as follows:
>
> | | |
> |---|---|
> | Current Unpaid Principal: | $212,271.49 |
> | Interest due from 6/1/2010: | $11,498.00 |
> | Late Charges: | $208.26 |
> | Escrow Advances: | $25,776.85 |
> | Corporate Advance: | $374.00 |
> | Foreclosure Fees and Costs: | $452.16 |
> | **Total Amount Due** | **$250,580.76** |
>
> Please submit your **cashier's check**, payable to Chase Home Finance LLC, *directly to this office*. Be advised that the amount is calculated through February 28, 2011

---

[3]Also contained in the January 4, 2010 letter is the language set forth below:
If permitted by your loan documents or applicable law, you have the right to reinstate after acceleration of the Loan and the right to bring a court action to assert the non-existence of a default, or any other defense to acceleration, foreclosure, and sale. However, the amount required to reinstate may be higher than what is owed under Paragraph 2 above due to additional fees and charges that we are entitled to collect under the Loan, including attorney fees related to any foreclosure action we initiate. . . .
Doc. 6, Ex. D., 2d unnumbered page, ¶ 5.

and will increase thereafter.  **AGAIN, UNLESS THE FUNDS
SPECIFIED BELOW ARE RECEIVED BEFORE THE SCHEDULED SALE
DATE AND TIME, THE FORECLOSURE SALE WILL BE HELD AS
SCHEDULED**.  We reserve the right to update this payoff
figure through the projected date.  You must contact
this office to verify these figures have not changed.

Id., Ex. E.  On that same date, Chase, acting through the same

law firm, sent the Estate another notice at the Sunwood Court

address that was similar to the first except that the second

provided the Estate a dollar amount, $25,239.68, which the notice

described as "[t]he amount to reinstate the above referenced loan

as of 2/3/2011."  Id., Ex. F.

On March 26, 2015, defendant (as successor to Chase), acting

through the same attorneys who sent the February 3, 2011 notices,

sent a letter to Estate of Woullard, and others, at the Sunwood

Court address, in which the statement was made that "SINCE YOU

HAVE NOT CURED YOUR DEFAULT BY PAYMENT OR OTHERWISE, THE

INDEBTEDNESS HAS BEEN ACCELERATED."  Id., Ex. G at 2.  The letter

was accompanied by an unsigned notice of substitute trustee's

sale indicating that a deed of trust sale was to occur on May 5,

2015.  Id., 3d unnumbered page.

The first mentioned of the February 3, 2011 notices

constituted notice of acceleration of the indebtedness evidenced

by the note Woullard gave to Chase in June 2007.  Inasmuch as

that acceleration occurred more than four years before this

5

action was initiated, defendant, as holder of the note, was barred by the limitations language contained in section 16.035(b) of the Texas Civil Practice & Remedies Code from conducting a sale pursuant to the deed of trust.[4] The cause of action that would justify enforcement of the deed of trust lien accrued on February 3, 2011, when Chase gave notice of acceleration of the indebtedness secured by the deed of trust lien.

* * * * *

Plaintiff alleged that the action was brought pursuant to the declaratory judgment statutes of the State of Texas for a declaration that the deed of trust lien is unenforceable due to defendant's failure to enforce its rights under the deed of trust within the four-year period contemplated by section 16.035(b).

II.

Procedural Background

Plaintiff initiated this action by the filing on April 30, 2015, of her original petition for declaratory relief and application for temporary restraining order in Case No. 2013-PR-673-2 in the Probate Court No. 2 of Tarrant County, Texas.[5] The

---

[4]Section 16.035(b) of the Texas Civil Practice & Remedies Code reads as follows:
   (b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

[5]Case No. 2013-PR-673-2 is the Tarrant County, Texas, probate court proceeding that was created by Nita Page's application for appointment as administratrix of her deceased father's estate. Doc. 16, Ex. B.

claim asserted then was essentially the same as the claim now being asserted by plaintiff in her amended complaint. In addition, plaintiff sought injunctive relief to prevent the non-judicial foreclosure of the deed of trust lien on the Sunwood Court property, which was then scheduled to be conducted May 5, 2015. On May 1, 2015, the state court probate judge signed a temporary restraining order prohibiting foreclosure on the Sunwood Court property, and scheduling a hearing on a temporary injunction for May 14, 2015.

On May 13, 2015, defendant removed the action to this court by a notice of removal filed and served on that date. Subject matter jurisdiction was based on diversity of citizenship and amount in controversy.

On May 14, 2015, the court ordered plaintiff to file an amended complaint consistent with federal court pleading requirements. In response to the order, plaintiff filed the amended complaint now under consideration on May 28, 2015. The motion to dismiss now under consideration and its supporting brief were filed by defendant on June 11, 2015. The following day, on June 12, 2015, plaintiff filed a motion to remand, to which defendant responded on July 6, 2015. The motion to remand was denied by order issued July 7, 2015.

III.

<u>The Ground of the Motion to Dismiss</u>

Defendant urged that plaintiff is in error in contending that the first-mentioned February 3, 2011 notice was notification of an acceleration of the debt, thus triggering the running of the four-year statute of limitations contemplated by section 16.035(b). According to defendant, the first February 3, 2011 notice failed to satisfy the acceleration requirements of Texas law that requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. Defendant maintains that the first February 3, 2011 notice was simply a payoff quote that does not indicate that Chase elected to accelerate the note. Doc. 9 at 3-4. As to the second February 3, 2011 notice, defendant contended that plaintiff attached too much significance to the use of the term "reinstate" in that notice by suggesting that it applies only to an accelerated loan. According to defendant, the term "reinstate" "is commonly used in the foreclosure context to refer to satisfying an arrearage." <u>Id.</u> at 5. Defendant referred to defendant's May 26, 2015 letter as an example of what an effective notice of acceleration should look like.

IV.

Analysis

A.   Texas Case Law Pertaining to Acceleration

Potentially pertinent principles were expressed by the Texas

Supreme Court in Holy Cross Church of God in Christ v. Wolf as

follows:

> If a note or deed of trust secured by real
> property contains an optional acceleration clause,
> default does not ipso facto start limitations running
> on the note.  Rather, the action accrues only when the
> holder actually exercises its option to accelerate.
> Effective acceleration requires two acts: (1) notice of
> intent to accelerate, and (2) notice of acceleration.
> Both notices must be clear and unequivocal.

44 S.W.3d 562, 566 (Tex. 2001) (citations and quotation marks

omitted).

In Ogden v. Gibraltar Sav. Ass'n, the Texas Supreme Court

explained that "[p]roper notice that the debt has been

accelerated, in the absence of a contrary agreement or waiver,

cuts off the debtor's right to cure his default and gives notice

that the entire debt is due and payable."  640 S.W.2d 232, 234

(Tex. 1982).  Perhaps more to the point, in McLemore v. Pacific

Sw. Bank, FSB, a Texas Court of Appeals stated the conclusion

that "we may reasonably infer that a notice of intent to

accelerate followed by a notice of a trustee's sale constitutes a

notice of acceleration."   872 S.W.2d 286, 292 (Tex. App.--
Texarkana 1994, no writ).

B.   Notice of Acceleration Was Given by the First February 3,
     2011 Notice

Quite clearly, the first of the two-step acceleration
process was accomplished by Chase's January 4, 2010 letter that
informed the Estate of Woullard that if it failed to cure the
default described in the letter within thirty-two days from the
date of the letter, Chase would accelerate the maturity of the
loan, declare all sums secured by the deed of trust immediately
due and payable, and commence foreclosure proceedings, all
without further notice.   Supra at 3-4.

The first February 3, 2011 notice notified the Estate that
Chase had done exactly what it had threatened in the January 4,
2010 letter to do.   The notice advised that it was being sent "in
conjunction with the processing of a non-judicial foreclosure."
Supra at 4.   It said that a foreclosure sale had been scheduled
and that unless the funds specified ($250,580.76) were received
before the scheduled sale date and time, the foreclosure sale
would be held as scheduled.   Supra at 4-5.   The $250,580.76
total amount due was described as "[t]he amount to Payoff the
above-referenced loan as of 2/3/2011."   Supra at 5.   No
reasonable person would interpret the first February 3, 2011

notice as being anything other than the second step of the foreclosure process, i.e., notice of acceleration.

The "reinstatement" notice (the second February 3, 2011 notice) was exactly what Chase informed the Estate it would receive when it told the Estate by the January 4, 2010 letter that "you have the right to reinstate after acceleration of the Loan." Supra at 4 and n.3. It gave the Estate the information it would need to accomplish such a reinstatement. When the two February 3, 2011 notices are considered together, the only reasonable interpretation of the second is that it was informing the Estate that it could prevent the foreclosure by paying the amount shown in that notice "to reinstate the above-referenced loan," thus making a clear distinction between the reinstatement amount and the amount that was then required to satisfy the outstanding indebtedness due by reason of the acceleration.

The court is not persuaded by defendant's contention (which, even if accurate, is outside the record and could not be considered in ruling on a motion to dismiss for failure to state a claim) that the term "reinstatement" is one "commonly used in the foreclosure context to refer to satisfying an arrearage." Doc. 9 at 5. Nor is the court persuaded that the letter sent out by defendant on March 26, 2015, apparently after it acquired the note and deed of trust in question, had the effect of undoing the

11

acceleration that was accomplished by Chase's mailings of the
January 4, 2010 notice of intent to accelerate and the
February 3, 2011 notice of acceleration.

For the reasons stated, the court has concluded that
defendant's motion to dismiss must be denied.

V.

Order

Therefore,

The court ORDERS that defendant's motion to dismiss be, and
is hereby, denied.

SIGNED July 21, 2015.

JOHN McBRYDE
United States District Judge